[No. 2081.]

CHENEY ET AL. V. MURTO, ADMINISTRATOR OF
TURBUTT'S ESTATE.

Bills and Notes—Trust Deeds—Unauthorized Foreclosure—Purchaser with Notice.

Where the payee of a note secured by a deed of trust transferred the note before maturity, and afterwards through fraudulent representations obtained from the holder posession of two unpaid interest coupons cut from said note and without the knowledge or consent of the owner of the note the trustee proceeded to foreclose the deed of trust for the default in payment of the two interest coupons and at the sale the property was bought by said payee the foreclosure was a nullity and a purchaser from said payee, with knowledge of the facts, acquired no title as against the holder of the note and cannot object to a foreclosure of the deed of trust by the legal holder of the note.

*Appeal from the District Court of Conejos County.*

Mr. CHARLES M. CORLETT, for appellants.

Mr. IRA J. BLOOMFIELD, for appellee.

WILSON, P. J.

In May, 1891, Lewis F. Crandell negotiated with The Colorado Securities Company a loan of one thousand dollars, for which he gave his note, payable in five years from date, the interest being represented by ten coupon notes attached. At the same time, to secure the payment of this, he executed a deed of trust upon certain lands in Costilla county

to H. J. Aldrich, trustee, who was at the time manager of The Colorado Securities Company, and the holder and owner of all but three of the seven thousand shares of the capital stock of the company, which had been issued. Within about a month afterward, The Colorado Securities Company sold and assigned the note to Samuel Turbutt, of Baltimore, Maryland. Shortly afterwards, Crandell sold and conveyed his interest in the land, subject to the deed of trust, to his wife, Adda G. Crandell, one of the defendants in this suit. The interest for 1891 and 1892 was promptly paid, but default was made as to that evidenced by the two coupons due in 1893. Some time in the latter part of this year, Aldrich, through fraudulent representations, induced Turbutt to send to him, or to the Securities company, these overdue interest coupons for 1893. Soon afterwards, in February, 1894, Aldrich, without the knowledge, consent or request of Turbutt, the owner and holder of the note, advertised the land for sale under the deed of trust, sold it in March, and at the sale the securities company became the purchaser for a consideration of $25.00. Very shortly subsequent, the securities company becoming insolvent, F. G. Patterson, also a defendant in this suit, was appointed receiver, and to him the company conveyed whatever title it had to the Crandell land by quitclaim deed. In June, 1895, more than a year after the pretended foreclosure, L. H. Cheney, the husband of Mrs. Alice B. Cheney, the principal defendant in this suit, and who had been a general agent of the securities company in the negotiations of loans in the section of the state where the Crandell land was situate, commenced a correspondence with the receiver with a view to the purchase of the land, requesting information in his first letter as to what would buy the land, and as to what condition the property was in as to title. The re-

ceiver answered, notifying Cheney that the trust deed
had been foreclosed without the knowledge or con-
sent of the holder of the loan, and that, if the holder
should so elect, he could probably go into court and
have the foreclosure set aside, adding: "The title
now stands in me, and I hold it in trust, subject to
the claim of the holder of the loan." This corre-
spondence resulted in the conveyance, October 24,
1895, by the receiver, by quitclaim deed to Mrs.
Cheney, the defendant, of all title which vested in
the receiver to the Crandell land. In May, 1895, Mr.
Turbutt first learned that there had been some kind
of a sale of the land at which the securities company
was the purchaser. Thereupon he wrote to Mr.
Cheney for information, and he answered that "the
land had been foreclosed under a second trust deed."
Thereafter, the exact time not appearing, however,
in the evidence, Mr. Turbutt, learning that this an-
swer was untrue, and obtaining correct information
as to the actual state of affairs, repudiated the action
of Aldrich, and employed an attorney in Colorado to
institute such proceedings as might be necessary to
protect his rights. For some reason this attorney did
not act for more than two years. In May, 1891, be-
ing within three years from Mr. Turbutt's discovery
of the fraud, he commenced this suit to have the sale
made by Aldrich declared void, and all conveyances
made thereunder cancelled of record, and for a fore-
closure of his trust deed. Mrs. Cheney, Mrs. Crandell
and receiver Patterson were made defendants. The
two latter made no appearance. Mrs. Cheney ap-
peared and answered. On the trial, judgment was
rendered against her in accordance with the prayer
of the complaint, and from this she appeals.

The main and controlling question in this case is
conclusively settled by an opinion handed down by
our supreme court at its April term of 1901, in a

case wherein Mrs. Crandell and Mrs. Cheney were the parties, and in which the invalidity of the trust deed, and the character of the title which Mrs. Cheney acquired by reason of the quitclaim deed to her from receiver Patterson, were considered and passed upon.—*Cheney v. Crandell,* 28 Colo. 383, 65 Pac. 56. The suit arose in this way. It seems that after the execution to Mrs. Cheney of the quitclaim deed, she entered into a contract with Mrs. Crandell, who was still in possession of the land, whereby, upon the payment of four hundred dollars, she was to convey to the latter her title. Mrs. Crandell made some payment under this agreement, but, learning soon afterwards, as she says, that misrepresentations had been made to her, and that the conveyance by Mrs. Cheney would not give her a complete and clear title by reason of the existence of the deed of trust to Turbutt, she repudiated the contract. Thereupon Mrs. Cheney commenced a suit in ejectment to obtain possession of the land. Mrs. Crandell in her answer set up as one of her defenses substantially all of the facts which we have detailed as arising in the suit at bar, alleging the fraud of Aldrich, the invalidity of the pretended foreclosure sale by him, and the invalidity of the asserted title by Mrs. Cheney derived from the quitclaim deed to her.

Referring to the question of whether Mrs. Cheney was an innocent purchaser for value, and the contention of the plaintiff in this suit that she was not, whatever the evidence might have been as to her knowledge of Aldrich's fraud, because her title was acquired by a quitclaim deed only, the court said: "It is not important here what the rule is in this state, for, entirely aside from this question, the evidence conclusively shows that plaintiff (Mrs. Cheney) had knowledge or was in possession of facts which, if diligently followed up, would have given her

information concerning this fraud. Before she acquired title, negotiations were pending between her and the receiver for the purchase of this property, and in his letters the receiver distinctly informed her husband (who, under the facts of this case, is the agent and representative of plaintiff) that the trust deed still existed as a lien upon this property, and that the pretended sale of the trustee was a fraud. * * * Before she parted with her money and took title, she was in possession of facts which, if they did not of themselves show the fraudulent character of the foreclosure, would, if followed up, have revealed to her the defects in the title which she was buying." Again, referring to the contention on the part of Mrs. Cheney that when Turbutt sent the two unpaid interest coupon notes to Aldrich that he sold and assigned them, and that thereupon either Aldrich or the securities company became the owner thereof, and hence being interested in the debt secured by the deed of trust, had a right to direct a foreclosure, the court said that it was not necessary to determine the question as to whether the owner and holder of any of these coupons was such a holder of the note as that upon his request a valid foreclosure and sale would be made, "for it is incontrovertible that neither Aldrich nor the securities company ever became the owner of either one of the interest coupons for the nonpayment of which the pretended foreclosure was had. He or it wrongfully converted these coupons to his or its own use, in violation of the promise made to the holder of the note from which they were detached. Therefore, as between the holder of the note and the securities company and Aldrich, this pretended foreclosure and sale were voidable at the option of the former." Further, in denying a petition for rehearing, the court said: "We are further of the opinion that, even if they belonged to the securities company, the at-

tempted foreclosure and sale by Aldrich constituted a palpable fraud, which conferred no title either upon the purchaser at the sale, or its grantee, the appellant, both of which took with notice of the unconscionable conduct of Aldrich." The conclusions and views of the supreme court based upon the same material facts also conclusively shown by the evidence in this case, meet with our most hearty approval and complete concurrence, and for the reason that they are equally applicable to and are decisive of this controversy, no further discussion or argument by this court is required.

Under the facts the pretended sale by Aldrich was fraudulent and void, and the plaintiff is clearly entitled to a judgment of foreclosure of the deed of trust given to secure the original note.—*Improvement Co. v. Whitehead,* 25 Colo. 354; *Kenney v. Jefferson Co. Bank et al.,* 12 Colo. App. 24; *Cheney v. Crandell, supra.*

Several minor questions were raised, but we do not consider it necessary in the determination of this appeal to pass upon them.

The judgment will be affirmed.

*Affirmed.*